IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DARLENE BROWN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:24-cv-257 (MTT) |
| ) | |
| Commissioner TIMOTHY WARD, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiffs Darlene Brown and Kelvin Brown ("plaintiffs"), as surviving parents of Joseph Brown ("J.B.") and putative personal representatives of the Estate of J.B., filed this 28 U.S.C. § 1983 action against 18 defendants currently or formerly employed by the Georgia Department of Corrections ("GDC"). Doc. 33. In their amended complaint, the plaintiffs claim the defendants violated the Eighth and Fourteenth Amendments by failing to protect J.B. from an inmate assault which led to his death at Macon State Prison ("MSP"). *Id.* The defendants have moved to dismiss Counts Three and Four for failure to state a claim. Doc. 38. For the following reasons, the defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

**I. BACKGROUND**

In July 2022, J.B. was an inmate at MSP, a GDC prison facility. Doc. 33 ¶ 24. J.B. was placed in Dorm H, a Tier I segregation unit, for possessing a cell phone. *Id.* ¶ 107. Defendant Hatcher, the dormitory lieutenant, assigned J.B. to share a cell with Demarquis Glenn, a man who was convicted of murder and sentenced to life without the

possibility of parole.  *Id*. ¶¶ 26-27, 47, 97.  According to the complaint, Hatcher was "engaged in the practice of using incarcerated people as weapons to control others in the segregation dorms."  *Id*. ¶¶ 139-150.  She would "knowingly house two people in the same cell with the express intent to have the dangerous person attack, injure, maim, and perhaps kill the 'target.'"  *Id*. ¶ 142.  Other officers and command staff at MSP were aware of Hatcher's retaliatory housing practice.  *Id*. ¶¶ 144-149.

Glenn had a history of disciplinary infractions and violence at MSP before July 2022.  In June 2019, Glenn was found with an 8-inch shank.  *Id*. ¶¶ 48-49.  In May 2021, Glenn repeatedly stabbed his then-cellmate with a shank while the cellmate was sleeping.  *Id*. ¶¶ 51-22.  Glenn had been smoking "strips," or paper soaked in insecticide, which caused him to become psychologically unstable and impulsive.  *Id*. ¶ 53.  In August 2021, Glenn requested to be moved from general population to Dorm H.  *Id*. ¶ 65.  He was later found with a shank during a routine cell search.  *Id*. ¶ 66.  In September 2021, Glenn attacked his then-cellmate with a shank, stabbing the cellmate in the back while a guard was handcuffing the cellmate.  *Id*. ¶¶ 67-70.  Again, Glenn had been smoking strips.  *Id*. ¶ 72.

When Glenn and J.B. were assigned to the same cell in July 2022, they requested not to be housed together.  *Id*. ¶ 109.  J.B. told defendant Hatcher that he was scared to be housed with Glenn.  *Id.* ¶ 110.  Glenn told Hatcher that there would be a "problem" if J.B. was housed with him.  *Id*. ¶ 111.  The other officers overseeing the segregation dormitories, including defendants Brown, Tullis, and Knight were aware of Glenn and J.B.'s objections to being housed together.  *Id*. ¶ 113.  In the following weeks, Glenn routinely smoked strips and began instigating fights with J.B.  *Id*. ¶¶ 114,

126.  Hatcher, Brown, Tullis, and Knight were aware of these fights.  *Id*. ¶ 117.  Glenn and J.B. continued to ask these officers to separate them.  *Id*. ¶ 118.

On July 25, 2022, Glenn stabbed J.B. multiple times with a shank; J.B. died the following day from his injuries.  *Id*. ¶¶ 124, 127-128.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Twombly*, 550 U.S.

at 555.  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Although qualified immunity provides government officials with a formidable shield, their entitlement to raise that shield is not automatic …. the official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority."  *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018).  "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'"  *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).  The plaintiffs do not dispute that the defendants were acting within their discretionary authority, so the burden shifts to the plaintiffs.  Doc. 40 at 3 n.1.

To overcome a qualified immunity defense, the plaintiffs must plausibly allege that (1) the facts, viewed in their favor, establish a constitutional violation; and (2) the defendants violated law that was clearly established at the time of the alleged violation.  *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).  This two-step analysis may be done in whatever order is deemed most appropriate for the case.  *Lewis*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

A right becomes "clearly established" in three ways.  *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).  First, the plaintiffs can show that a materially similar case has already been decided, consisting of binding precedent by the United States Supreme Court or the Eleventh Circuit.  *Id*.  Second, the plaintiffs can show that a broader clearly established principle should control the novel facts of the particular case—that is, the unconstitutionality of the instant conduct must be apparent by looking to the guiding principles of the previous case, irrespective of the underlying factual situation.  *Id*.  Third, the plaintiffs can show that the conduct is so egregiously unconstitutional that prior case law is unnecessary.  *Id*.

### III. DISCUSSION

The Court concludes that the plaintiffs have stated a claim for Count Three against defendants Smith, McKenzie, Sales, Eaddie, Knight, Hudson, Jeffries, Williams, Lindsey, Brown, and Banks.  For those defendants, the Court further concludes, based on the plaintiffs' allegations, that they had sufficient notice that their acts or omissions violated J.B.'s constitutional rights.  Count Four is dismissed without prejudice.

**A. Deliberate Indifference to Safety**

Under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates."  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014); *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").  To state a claim for failure-to-protect, the plaintiffs must plausibly allege: (1) a substantial risk of serious harm; (2) deliberate indifference to

that risk; and (3) causation.  *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013); *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard."  *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016).  To prevail, a plaintiff must allege "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety."  *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane*, 835 F.3d at 1307).  Plaintiffs can make this showing by demonstrating either a "general threat" to inmates based on dangerous conditions in the prison or particular area of the prison, or by an individualized risk based on a "specific threat" to the prisoner.  *Marbury*, 936 F.3d at 1233, 1235; *see also Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005).

To establish the second element—deliberate indifference—a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'"  *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting *Farmer*, 511 U.S. at 839).  Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citing *Farmer*, 511 U.S. at 837).  The determination of whether a risk has been disregarded is objective: "[T]he [defendant] must have responded to the known risk in an unreasonable manner."  *Marbury*, 936 F.3d at 1233; *Wade*, 106 F.4th at 1262.  In other words, "a

defendant who 'respond[s] reasonably' to a risk, even a known risk, 'cannot be found liable' under the Eighth Amendment." *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 837) (internal citation omitted). To allege that "the defendant acted with 'subjective recklessness as used in the criminal law'" the plaintiff must allege "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Id.*

"Finally, the plaintiff must show a 'necessary causal link' between the defendant's failure to act reasonably and the plaintiff's injury." *Marbury*, 936 F.3d at 1233 (quoting *Rodriguez*, 508 F.3d at 623). This causal connection requires that the defendant "(1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which he nevertheless disregarded." *Nelson v. Tompkins*, 89 F.4th 1289, 1298 (11th Cir. 2024) (quoting *Rodriguez*, 508 F.3d at 622).

*1. Count Three: Deliberate Indifference to Dangerous Conditions Caused by Glenn*

In Count Three, the plaintiffs allege that defendants Smith, McKenzie, Sales, Eaddie, Knight, Hudson, Jeffries, Williams, Lindsey, Brown, Hatcher, and Banks—all of whom worked at MSP—failed to address Glenn's hyperviolent nature. Doc. 33 ¶¶ 151-170. The defendants argue that the plaintiffs fail to allege the second element of deliberate indifference. Doc. 38-1 at 5. Specifically, the defendants maintain that they were not subjectively aware of Glenn's hyperviolent nature and thus could not have disregarded the risk he posed to J.B. *Id.*

The amended complaint plausibly alleges that defendants Smith, McKenzie, Sales, Eaddie, Knight, Hudson, Jeffries, Williams, Lindsey, Brown, Hatcher, and Banks were aware of the risk Glenn posed to J.B.  The amended complaint alleges that the defendants were involved in the investigation and classification proceedings following Glenn's September 2021 shank attack against his cellmate.  *See, e.g.,* Doc. 33 ¶¶ 167-168.  The plaintiffs allege that the defendants were aware of Glenn's violent history, including his murder conviction,[1] his two violent, possibly drug-induced attacks against then-cellmates in May 2021 and September 2021, and his repeated possession of shanks.[2]  *Id*.  Thus, by means of their direct involvement in the classification proceedings and their authority to place Glenn in Tier II or Tier III segregation after the September 2021 attack, the amended complaint plausibly alleges that the defendants knew Glenn would pose a substantial risk of serious harm to his future cellmates.

Further, the amended complaint alleges that defendants Smith, McKenzie, Sales, Eaddie, Knight, Hudson, and Brown were aware of Hatcher's retaliatory housing practices and thus knew that Glenn was housed with J.B. precisely because Hatcher considered Glenn to be a particularly dangerous person.  *Id*. ¶¶ 139-150.  And the plaintiffs allege that defendants Hatcher, Brown, and Knight were aware that Glenn and J.B. objected to being housed together, that Glenn was regularly instigating fights with

---

[1] The defendants argue that Glenn's murder conviction should not be "part of the 'danger' analysis" because many inmates at MSP are incarcerated for violent crimes.  Doc. 38-1 at 7.  But the Eleventh Circuit has factored an inmate's conviction into the substantial risk of serious harm calculus, and GDC Standard Operating Procedures (SOPs) instruct officers to consider the "notoriety" and "egregious[ness]" of crimes in determining whether to place inmates in segregation.  *See* GDC SOP 209.08, 4-5 & 209.09, 3-4 https://gdc.georgia.gov/organization/about-gdc/agency-activity/policies-and-procedures/facilities-division-policies/209 (April 11, 2016); *Bowen*, 826 F.3d at 1321.

[2] While the defendants contend that the amended complaint only asserts that the defendants knew—at best—that Glenn was a "generally problematic inmate," this is clearly not the case taking the plaintiffs' allegations as true.  Doc. 38-1 at 7 (citing *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)).

J.B., and that both men asked to be separated. *Id*. ¶¶ 109-122. In sum, the amended complaint plausibly alleges that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and … also dr[e]w the inference." *Rodriguez,* 508 F.3d at 617 (citing *Farmer,* 511 U.S. at 837).

Next, the amended complaint plausibly alleges that the defendants disregarded the known risk Glenn posed to J.B. and "acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting *Farmer*, 511 U.S. at 839). Again, the amended complaint alleges that the defendants were the individuals responsible for the classification decision to keep Glenn in Tier I and otherwise allow him to continue sharing a cell after the September 2021 attack. Doc. 33 ¶¶ 76-78. The plaintiffs plausibly allege that the reasonable course of action after Glenn's 2021 attack would have been to place Glenn in Tier II or III segregation or ensure that he would not be housed with other inmates.[3] *Id*. ¶¶ 73-74; 158; 165. Instead, the defendants decided Glenn should stay in Tier I where he would share a cell with other inmates such as J.B. *See Marbury*, 936 F.3d at 1233 ("[T]he [defendants] must have responded to the known risk in an unreasonable manner."); *Wade*, 106 F.4th at 1262. In sum, the complaint plausibly alleges that the defendants were "subjectively aware that their own conduct put [J.B.] at substantial risk of serious harm." *Wade*, 106 F.4th at 1255.

---

[3] The plaintiffs allege that according to GDC SOP, "[a] person is eligible for Tier III segregation for, among other offenses, "[k]illing or causing serious injury to another person within the previous five (5) years … or[] [t]wo (2) or more disciplinary infractions for possession of a weapon within the previous five (5) years." Doc. 33 ¶ 41. Thus, on this record, Glenn was eligible for Tier III segregation after either cellmate attack in 2021.

Finally, clearly established law provided the defendants with notice that their alleged deliberate indifference violated the Eighth Amendment. The plaintiffs point to *Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016) as a materially similar case. In *Bowen*, the Eleventh Circuit held that the defendant officials were subjectively aware of a substantial risk of serious harm to an inmate, Mr. Bowen, at the hands of another inmate, Merkerson, because the officials were aware of the danger Merkerson posed, including:

> (1) that Merkerson had been convicted of murder; (2) that Merkerson was a severe paranoid schizophrenic who suffered from auditory hallucinations and violent delusions involving his cellmates; (3) that Merkerson could become impulsive and dangerous if his mental condition decompensated; (4) that Merkerson was designated by the prison as a Level III mental health inmate, … (5) that … Merkerson had been transferred from Unit H-2 to Unit K-3, the segregation unit, for assaulting his previous cellmate; (6) that the prison's "Placement Guideline[s]" required mental health inmates who had committed an assault to be housed alone; (7) that Mr. Bowen was being housed in the cell with Merkerson in contradiction to the Guidelines' requirement; [and] (8) that Merkerson was significantly larger than Mr. Bowen.

*Bowen*, 826 F.3d at 1321. Here, the defendants involved in the classification proceedings allegedly knew (1) Glenn had been convicted of murder; (2) Glenn routinely smoked strips; (3) Glenn became psychologically unstable and violent when he smoked strips; (4) on two separate occasions, Glenn stabbed his cellmate with a shank after smoking strips; (5) Glenn had been found with a shank four times at MSP since June 2019; and (6) Glenn was eligible for Tier II or Tier III segregation based, at minimum, on either attack against his cellmates within the previous five years. In sum, the cases share multiple factors which together are sufficient to alert defendant officials of a substantial risk of serious harm: a murder conviction; a known risk of impulsive and violent behaviors induced by an unbalanced mental condition; a prior violent attack

against a cellmate (two in Glenn's case); and a looming physical threat (while Merkerson was simply physically larger than Mr. Bowen, Glenn had a demonstrated ability to procure shanks at MSP). The defendants are not entitled to qualified immunity at this stage of the proceedings.

*2. Count Four: Deliberate Indifference to General Conditions at MSP*

In Count Four, the plaintiffs allege that "[i]n July of 2022, conditions at Macon State Prison generally, and Dorm H specifically, had deteriorated to the point that incarcerated people were exposed to the constant threat of violence." Doc. 33 ¶ 171. The plaintiffs largely rely on an October 2024 Department of Justice ("DOJ") Investigation of Georgia Prisons Report documenting widespread, systemic problems throughout GDC prisons, including MSP. *See generally* Docs. 33 ¶¶ 171-205; 33-1. The plaintiffs also make specific allegations about general conditions at MSP and in Dorm H. Doc. 33 ¶¶ 171-205. The amended complaint then simply alleges:

> The Defendants identified in this Count—Defendants Ward, Myrick, Holt, Toole, Ford, Smith, McKenzie, Sales, and Eaddie—were aware of these systemic failures at MSP, were in a position to address these systemic failures, and did not act reasonably to address these systemic failures. These Defendants did nothing material to meaningfully address the rampant violence at MSP.

*Id*. ¶ 206. The parties' briefing assumes Count Four attempts to state a supervisory liability claim. That is a safe assumption—it is hard to see how Count Four could assert anything else. Yet Count Four alleges neither what each defendant knew or what each defendant did or failed to do. This omission is particularly problematic for defendants Ward, Myrick, Holt, Toole, and Ford, the Count Four defendants who did not work at

-11-

MSP, including one who apparently was not employed by GDC when J.B. was murdered.[4]

As noted, to state a claim for deliberate indifference, the plaintiffs must also plausibly allege deliberate indifference and causation. *Wade*, 106 F.4th at 1255; *Marbury*, 936 F.3d at 1233. In other words, they must allege that each defendant knew that inmates faced a serious risk of harm because of the general conditions at MSP, that each defendant knew his or her conduct would put inmates at risk of serious harm, and that each defendant's conduct caused the conditions about which the plaintiffs complain. *Wade*, 106 F.4th at 1255; *Keith v. Dekalb Cnty.*, 749 F.3d 1034, 1048-49 (11th Cir. 2014). Deliberate indifference and causation overlap in that each element requires the Court to inquire into whether "a particular defendant had the (authority and means) to provide adequate security and did not do so." *Williams v. Bennet*, 689 F.2d 1370, 1389 (11th Cir. 1982).[5] Here, the plaintiffs fail to plausibly allege that any of the defendants in Count Four had the requisite knowledge and the authority and means to improve the security measures at MSP.

Again, the only substantive allegation in Count Four is that defendants Ward, Myrick, Holt, Toole, Ford, Smith, McKenzie, Sales, and Eaddie "were aware of [] systemic failures at MSP, were in a position to address these systemic failures, and did not act reasonably to address these systemic failures." Doc. 33 ¶ 206. Allegations of

---

[4] *See* Doc. 42 at 8 ("[Defendant] Ricky Myrick retired from GDC in 2021").

[5] *See Barefield v. Dunn*, 688 F. Supp. 3d 1026, 1075 n.28 (M.D. Ala.) ("To be clear, authority and means to remedy the excessive risk of inmate violence bears directly on causation; however, it overlaps with deliberate indifference because an official can rarely manifest a deliberately indifferent state of mind by failing to do something that was not in the official's power to do. Accordingly, the court considers authority and power as to deliberate indifference and causation.").

collective awareness, absent specific allegations about what each defendant did or did not do, are entirely insufficient to establish deliberate indifference. The plaintiffs do not allege the responsibilities each defendant had or how their positions would allow them to address the general risk of harm at MSP. They do not allege customs or policies attributable to any defendant or actions taken by any defendant. Perhaps discovery will tell more, but for now the plaintiffs fail to plausibly allege that the Count Four defendants were deliberately indifferent or that their conduct caused a substantial risk of serious harm.

Accordingly, Count Four is **DISMISSED without prejudice**.

## IV. CONCLUSION

The defendants' motion to dismiss (Doc. 38) is **GRANTED** in part and **DENIED** in part. Count Three will proceed against defendants Smith, McKenzie, Sales, Eaddie, Knight, Hudson, Jeffries, Williams, Lindsey, Brown, Hatcher, and Banks. Count Four is **DISMISSED without prejudice**.

**SO ORDERED**, this 6th day of May, 2025.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT